UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNARDO ESTEVES,

        Plaintiff,

v.

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION AND ORDER**
**04-CV-00708**

1. Plaintiff Bernardo Esteves challenges an Administrative Law Judge's ("ALJ") determination that he is not entitled to Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since September 20, 2001, because of post traumatic stress disorder, and problems with his hands, feet, back, and shoulder. Plaintiff contends his symptoms have rendered him unable to engage in any level of substantial gainful activity. He therefore asserts that he is entitled to payment of SSI benefits under the Act.

2. Plaintiff filed an application for SSI on September 28, 2001. His application was denied initially and on reconsideration. At Plaintiff's request, an administrative hearing was held before ALJ Fenton H. Hughes on April 14, 2003. Plaintiff appeared at the hearing with counsel and testified. ALJ Hughes considered the case *de novo*, and on June 23, 2003, found Plaintiff was not under a disability. On July 2, 2004, the Appeals Council denied

Plaintiff's request for review. Plaintiff filed the current civil action on September 7, 2004, challenging defendant's final decision.

3. On September 7, 2004, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c)(3) of the Act, reverse the determination of the Commissioner denying Plaintiff's application for SSI benefits, and remand the matter for a new administrative hearing.[1] The Defendant filed an answer to Plaintiff's complaint on October 29, 2004, requesting the Court dismiss Plaintiff's complaint. Defendant filed a Motion for Judgment on the Pleadings and a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings on February 28, 2005. After the Court granted Plaintiff an extension of time to respond to Defendant's Motion for Judgment on the Pleadings, Plaintiff submitted a Memorandum of Law in Opposition to the Commissioner's Motion for Judgment on the Pleadings on April 28, 2005. Defendant filed a reply to Plaintiff's Memorandum of Law on May 13, 2005. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See

---

[1] The ALJ's June 23, 2003, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activeties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by

considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

  9. In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 25, 2001 (R. at 16); (2) The medical evidence establishes that Plaintiff has post traumatic stress disorder, alcohol abuse, and dependent personality disorder, but he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (R. at 16); (3) Plaintiff's allegations of loss of concentration, depression and other symptoms are not credible since they are inconsistent with the objective clinical findings, evidence showing improvement in symptoms with cessation of alcohol abuse and with appropriate medication, and the opinion and findings of the treating psychiatrist (R. at 16); (4) Plaintiff has the residual functional capacity to perform the physical exertion and non-exertional requirements of work, except that he can perform medium work and can perform basic work pressures in a low contact setting. See 20 C.F.R. 416.964 (R. at 16); (5) Plaintiff has no past relevant work (R. at 16); (6) Plaintiff's residual functional capacity for the full range of work is reduced by the limitations in finding No. 4 (R. at 16); (7) At the date of the hearing,

Plaintiff was 45 years old, which is defined as a "younger individual." See 20 C.F.R. 416.963 (R. at 16); (8) Plaintiff has a first grade education and is illiterate. See 20 C.F.R. 416.964 (R. at 16); (9) Plaintiff has no transferable skills (R. at 16); (10) Based on an exertional capacity for medium work, and Plaintiff's age, education, and work experience, section 416.969 of Regulations No. 16, and Rule 203.25, Table No. 3, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled" (R. at 16); (11) Plaintiff's capacity to perform the full range of medium work has not been significantly eroded by his additional non-exertional restrictions. Thus, the above rule used as a framework for decision-making directs a finding of "not disabled" (R. at 17). Ultimately, the ALJ determined Plaintiff was not under a disability, as defined by the Act, at any time between his alleged onset of disability date of September 20, 2001, through the date of his hearing before the ALJ on April 14, 2003 (R. at 17).

10. Plaintiff challenges the ALJ's decision on the basis that the ALJ failed to properly consider the medical opinion evidence from the consultative psychological examiner, instead relying on the medical records from Plaintiff's treating psychiatrist when crafting his decision that Plaintiff was not disabled. Plaintiff acknowledges that a treating source's opinion may be entitled to special significance. See 20 C.F.R. §§ 404.1527(a), 416.927(a); see also SSR 96-5p. However, citing Pena v. Chater and Pagan on Behalf of Pagan v. Chater, Plaintiff points out the ALJ must properly evaluate all medical opinion brought to his or her attention, and provide an explanation if a medical

opinion is rejected. See Pena v. Chater, 968 F. Supp. 930, 937 (S.D.N.Y. 1997); Pagan on Behalf of Pagan v. Chater, 923 F. Supp. 547, 555 (S.D.N.Y. 1996).

At the time of the ALJ's decision, Plaintiff was forty-seven years old (R. at 17, 140). He claimed a first grade education, and was illiterate in both English and Spanish (R. at 47, 55). Plaintiff lived with his wife and sons, and had no past relevant work history (R. at 33-37, 42). He stated he did little in the way of daily activities, except that he watched television, slept for a few hours, and worked around the house (R. at 54).

Plaintiff's medical records are limited. On July 12, 2001, he was seen at Kaleida Health for lower leg pain (R. at 96). He stated he had not been treated by a physician in many years, and requested that the examiner complete a disability form for him. Id. When the examiner told Plaintiff the form could not be completed without knowing more about Plaintiff and his medical condition, Plaintiff refused to be seen and walked out of the clinic. Id. Plaintiff returned to Kaleida Health on September 19, 2001, complaining of cramping in his right hand and foot pain. Id. He was seen again at Kaleida Health for foot pain on October 4, 2001 and October 25, 2001; however, the record does not contain notes of what treatment, if any, Plaintiff received. Id. Plaintiff was treated for problems with his feet by Dr. James Burruano at Niagara Family Medicine Center October 25, 2001, November 29, 2001, and January 10, 2002 (R. at 93-95). No further treatment information pertaining to Plaintiff's right hand or feet is contained in the record.

Plaintiff's record contains an undated letter from Wilfredo Martinez, an Addictions Rehab Specialist at Alcohol and Drug Dependency Services, Inc., stating Plaintiff had been in individual counseling for alcohol abuse since June 13, 2001, and Plaintiff's urine tests showed he had been abstaining from alcohol (R. at 110). No treatment notes from Mr. Martinez are included in the record. Plaintiff's record also includes a letter from Oscar Velazquez, a social worker at Lake Shore Behavioral Health, stating Plaintiff was a mental health patient at Lower West Side Counseling Services where he received weekly counseling for post traumatic stress disorder (R. at 89). The letter is dated August 28, 2001. No treatment notes from Lower West Side Counseling Services are contained in the record. However, a Comprehensive Mental Health Assessment of Plaintiff completed by Mr. Velazquez shows Plaintiff's admission date to the program at Lake Shore Behavioral Health as August 31, 2001 (R. at 98). In the assessment, Mr. Velazquez noted Plaintiff reported sleep disturbances, nightmares, crying spells, and auditory and visual hallucinations, and suicidal ideation (R. at 98, 100). Plaintiff was next examined and treated by Dr. Hernandez, a psychiatrist at Lake Shore Behavioral (R. at 102-103). Dr. Hernandez diagnosed Plaintiff with post traumatic stress disorder, alcohol abuse, dependent personality disorder, and a Global Assessment of Functioning score of 70 (R. at 103).[2] Plaintiff reported to the doctor he had been alcohol

---

[2] The Global Assessment of Functioning (GAF) is a numeric scale used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults. A score of 70 indicates a patient has some mild symptoms (e.g,. depressed mood, mild insomnia) or difficulties in social, occupational, or school functioning, but is generally functioning well and has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, 4th ed., p. 34 (2000).

free for six to seven months, and denied having delusions, hallucinations, or suicidal ideation. Id. Dr. Hernandez noted that although Plaintiff was illiterate, his comprehension, general fund of knowledge, and vocabulary seemed to be adequate. Id. She prescribed medication for Plaintiff's depression, post traumatic stress disorder symptoms, and insomnia, as well as supportive therapy. Id.

Dr. Hernandez examined Plaintiff again on October 23, 2001 (R. at 104). His mental health assessment was unremarkable, and the doctor noted Plaintiff had decreased depression and improved sleep. Id.

Plaintiff was assessed by consultative examiner M. Cheryl Butensky, Ph.D., on November 13, 2001 (R. at 138). Dr. Butensky diagnosed post traumatic stress disorder, alcohol abuse seven months in remission, and borderline level of intellectual functioning. Id. She noted the combination of Plaintiff's intellectual limitations and psychiatric difficulties would seem to present marked limitations in his ability to function. Id. On the same day, Plaintiff was also assessed by consultative examiner Dr. Richard Lanham (R. at 141-142). Plaintiff's physical examination revealed unremarkable results. Muscle strength in proximal and distal groups was 5/5 and bilaterally equal, with muscle tone 5/5 bilaterally (R. at 141). Hand and finger movements showed normal dexterity, with no sign of tremors or muscle atrophy. Id. Grip strength was 5/5 bilaterally, and sensory was normal for light touch, pain, and vibration. Id. Plaintiff was able to dress and undress himself, get on and off the examination table without assistance, and sit down and rise up from a

chair. Id. Dr. Lanham's examination of Plaintiff's spine revealed some limitation of motion and tenderness in the lumbar area, but no kyphosis, scoliosis, pelvic tilt or muscle spasms. Id. An x-ray of Plaintiff's spine was normal (R. at 142). Dr. Lanham observed Plaintiff was dressed appropriately, maintained eye contact, and showed appropriate mood and affect (R. at 141).

Treating psychiatrist Dr. Hernandez evaluated Plaintiff on November 20, 2001, and noted an unremarkable mental health assessment, decreased depression, and fair sleeping (R. at 105). She treated Plaintiff on January 15, 2002, and again noted an unremarkable mental health assessment, decreased depression, better sleep, no stressors, and abstinence from drinking (R. at 106).

State agency psychiatrist, Dr. Hillary Tzetzo, conducted a thorough review of Plaintiff's medical and psychiatric records, and opined he should be able to handle basic work pressures in a low contact setting (R. at 63-80). State agency analyst K. Badger also reviewed Plaintiff's medical and psychiatric records and opined in a Physical Functional Capacity Assessment that the records revealed no evidence to establish exertional limitations, postural limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations (R. at 81-87).

In his June 23, 2003 decision, the ALJ considered all medical evidence pertinent to Plaintiff's claim of disability, including the record and opinion of consultative psychological examiner, M. Cheryl Butensky, Ph.D. (R. at 12-17). The ALJ cited Dr. Butensky's assessment of Plaintiff in his

decision and explicitly noted Dr. Butensky's views concerning Plaintiff's psychological functioning (R. at 13). The ALJ credited Dr. Butensky's opinion that Plaintiff is "quite avoidant of social contact and distrustful of others" by finding in Plaintiff's residual functional capacity assessment that he was limited to work in a low contact setting (R. at 15-16, 138). Additionally, the ALJ considered Dr. Butensky's opinion that Plaintiff suffered from post traumatic stress disorder by finding Plaintiff had this condition and it was a severe impairment (R. at 13, 16, 138).

As noted at the beginning of this section, Plaintiff cites Pena v. Chater in his Memorandum of Law in Opposition to the Commissioner's Motion for Judgment on the Pleadings in support of his contention that "the ALJ must evaluate every medical opinion it receives, regardless of its source." See Pena v. Chater, 968 F. Supp. 930, 937 (S.D.N.Y. 1997). However, Plaintiff fails to reconcile his claim that the ALJ ignored a portion of Dr. Butensky's assessment with the opinion of the Court in Pena stating, "the ALJ must clearly set forth the essential considerations with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence, [and] he need not "explicitly reconcile every conflicting shred of medical testimony." See Pena v. Chater, 968 F. Supp. 930, 938 (S.D.N.Y. 1997); see also White v. Secretary of HHS, 910 F.2d 64, 65 (2d Cir. 1990); Ferraris v. Heckler, 728 F.2d 582, 586 (2d Cir. 1984); Mongeur v. Heckler, 722 F.2d 1033, 1040 (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).

11

This Court finds the ALJ was specific in his consideration of Dr. Butensky's opinion of Plaintiff's psychological functioning with respect to Plaintiff's well-documented post traumatic stress disorder and need for low contact in the workplace. With respect to Dr. Butensky's opinion that Plaintiff would require psychiatric stabilization prior to being able to tolerate situations in which there were others, the Court notes Plaintiff was under the regular care of treating psychiatrist Dr. Hernandez, who reported unremarkable mental health assessments, and improved sleep with less depression since Plaintiff had been taking his medications and abstaining from alcohol (R. at 103-106, 138).

Plaintiff also cites <u>Pagan on Behalf of Pagan v. Chater</u> in an attempt to convince the Court that the ALJ committed reversible error by failing to consider the opinion of Plaintiff's mental health counselor at Lake Shore Behavioral Health, which is more in line with the opinion of consultative psychological examiner Dr. Butensky than with Plaintiff's treating psychiatrist, Dr. Hernandez (R. at 98-101, 103-106, 138). Plaintiff has apparently misunderstood the import of <u>Pagan</u>. In that case, the ALJ rejected without explanation the medical opinion of the claimant's treating physician, relying instead on the opinion of a non-examining medical consultant in determining claimant was not disabled. The <u>Pagan</u> court remanded the case to the Commissioner for an examination of how much weight the treating physician's opinion merited if it was determined not to be controlling, including (1) the length of the treatment relationship, (2) the nature and extent of the treatment

12

relationship, (3) the supportability of the treating physician's opinion, (4) the opinion's consistency with the record as a whole, and (5) whether the opinion is that of a specialist. See Pagan on Behalf of Pagan v. Chater, 923 F. Supp. 547, 556 (S.D.N.Y. 1996).

In the instant case, Plaintiff's counselor at Lake Shore Behavioral Health is not an acceptable treating source as defined by the Commissioner, and this was noted by the ALJ in his decision (R. at 15). See C.F.R. 416.913. Thus, the ALJ was under no obligation to weigh the counselor's assessment of Plaintiff in his decision. The ALJ did, however, clearly outline his reasons for assigning the opinion of treating psychiatrist Dr. Hernandez a greater weight than the opinion of consultative psychologist Dr. Butensky (R. at 15). The ALJ noted that (1) Dr. Hernandez was Lake Shore Behavioral Health's psychiatrist, (2) she had treated Plaintiff from October 2001, through January 2002, (3) she prescribed medication to treat Plaintiff's depression and insomnia and the medications improved Plaintiff's symptoms, (4) Plaintiff's mental health assessments did not show any signs of severe or disabling depression, and (5) based on Plaintiff's reported traumatic history of abuse, Dr. Hernandez diagnosed Plaintiff with post traumatic stress disorder (R. at 15). The ALJ also noted the significant differences between the opinions of consultative psychologist Dr. Butensky and treating psychiatrist Dr. Hernandez, including Dr. Butensky's notes that Plaintiff reported auditory hallucinations, nightmares, flashbacks, dissociative episodes, and possible borderline intellectual functioning. Id. Further, the

ALJ observed that the consultative physical and mental examinations of Plaintiff failed to document any significant problems based on objective criteria within the limited time frame in which Plaintiff was treated. Id.

Accordingly, this Court finds the ALJ properly considered the opinions of Plaintiff's treating psychiatrist and consultative psychologist, clearly resolved the conflicting opinion evidence, and assigned the opinions their proper weight. Thus, this Court finds the ALJ did not commit reversible error by giving greater weight to the opinion of Plaintiff's treating psychiatrist in finding Plaintiff was not disabled during the time period relevant to this claim.

11.  After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and opinions. It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in finding that Plaintiff is not disabled. Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's Motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings, officially docketed as a Memorandum in Opposition to the

Commissioner's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   June 28, 2007
         Buffalo, New York

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

15